IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LATONIA WILLIAMS, DEQURVIA WILLIAMS and DERRICK BARNES, individually and on behalf of all others similarly situated, | No. 1:20-cv-00025 <br><br> Consolidated with: No. 1:20-cv-02232 |
| Plaintiff, | Judge Thomas M. Durkin |
| v. | Magistrate Judge Gabriel A. Fuentes |
| PERSONALIZATIONMALL.COM, LLC, | |
| Defendant. | |

## CONSOLIDATED CLASS ACTION COMPLAINT & JURY DEMAND

Plaintiffs LaTonia Williams, Dequrvia Williams and Derrick Barnes ("Plaintiffs"), individually, and on behalf of all others similarly situated, bring this Class Action Complaint against Defendant, Personalizationmall.com, LLC ("Defendant"), to stop Defendant's capture, collection, use and storage of individuals' biometric identifiers and/or biometric information in violation of the Illinois Biometric Information Privacy Act ("BIPA") 740 ILCS 14/1 *et seq.*, and to obtain redress for all persons injured by Defendant's conduct. Plaintiffs allege the following upon information and belief, except as to the allegations within Plaintiffs' personal knowledge, and state as follows:

### NATURE OF ACTION

1. This case concerns Defendant's conduct of capturing, collecting, storing, and using Plaintiffs' and other workers' biometric identifiers and/or biometric information without regard to BIPA and the concrete rights and pecuniary interests Illinois' BIPA protects. Defendant does this in the form of finger scans, which capture a person's fingerprint, and then Defendant uses that fingerprint to identify that same person in the future.

2. Following the 2007 bankruptcy of a company specializing in the collection and use of biometric information, which risked the sale or transfer of millions of fingerprint records to the highest bidder, the Illinois Legislature passed detailed regulations addressing the collection, use and retention of biometric information by private entities, such as Defendant.

3. The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

4. Plaintiffs bring this action for damages and other legal and equitable remedies resulting from the illegal actions of Defendant in capturing, collecting, storing and using Plaintiffs' and other similarly situated individuals' biometric identifiers and biometric information without written informed consent, in direct violation of the Illinois BIPA. *See* 740 ILCS § 14/10.

5. Choosing to shun more traditional timekeeping methods, Defendant has instead implemented an invasive program that relies on the capture, collection, storage and use of its workers' fingerprints, while disregarding the applicable Illinois statute and the interests it protects.

6. Defendant's workers in Illinois have been required to clock "in" and "out" of their work shifts by scanning their fingerprints, and Defendant's biometric computer systems then verify the worker and clock the worker "in" or "out."

7. Unlike traditional time clock punch cards which can be changed or replaced if lost or compromised, fingerprints are unique, permanent biometric identifiers[1] associated with each worker. This exposes Defendant's workforce to serious and irreversible risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, the workers and individuals have no means by which to prevent identity theft and unauthorized tracking.

8. In recognition of the concern regarding the security of individuals' biometrics, the Illinois Legislature enacted BIPA, which provides, inter alia, that private entities, such as Defendant, may not obtain and/or possess an individual's biometrics unless they first:

   a. Inform that person in writing that biometric identifiers or information will be collected or stored;

   b. Inform that person in writing of the specific purpose and the length of term for which such biometric identifiers or biometric information is being collected, stored and used;

   c. Receive a written release from the person for the collection of their biometric identifiers or biometric information; <u>and</u>

   d. Publish a publicly available retention schedule and guidelines for permanently destroying biometric identifiers and biometric information.

---

[1] BIPA defines a "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. BIPA defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers." *Id*. Plaintiffs herein use the terms "biometric information" and "biometric identifier" interchangeably.

9. BIPA expressly obligates Defendant to obtain an executed, written release from an individual, as a condition of employment, in order to capture, collect and store an individual's biometric identifiers, especially a fingerprint, and biometric information derived from it.

10. BIPA further obligates Defendant to inform individuals in writing that a biometric identifier or biometric information is being collected or stored; to tell its workers in writing for how long it will store their biometric information and any purposes for which biometric information is being captured, collected, and used; and to make available a written policy disclosing when it will permanently destroy such information.

11. BIPA makes all of these requirements a precondition to the collection or recording of fingerprints and associated biometric information. Under BIPA, no biometric identifiers or information may be captured, stored or recorded if these pre-capture, pre-collection requirements are not met.

12. In direct violation of the foregoing provisions, Defendant actively captured, collected, stored, and used, without obtaining informed written consent or publishing its data and retention and deletion policies, the biometrics of hundreds of individuals and workers throughout the State of Illinois whose fingerprints are or were captured and stored for timekeeping purposes.

13. Defendant fingerprinted workers like Plaintiffs, at their facilities, without properly obtaining the above-described written executed release in violation of Section 15(b)(3) of BIPA, and without making the required disclosures concerning the collection, storage and use or destruction of biometric identifiers or information in violation of Section 15 of BIPA.

14. The workers' fingerprints are unique to each such worker, and Defendant's capture, collection, and use of those biometric identifiers and information violates each worker's substantive rights protected under BIPA and exposes workers to serious and irreversible risks –

4

risks that BIPA was designed to avoid – including the ever-present risk of a data breach of Defendant's systems exposing workers' biometrics to hackers and other wrongdoers worldwide.

15. Defendant's practice of collecting fingerprints from its workers is unlawful and a serious invasion of its workers' rights concerning their biometric information. Defendant has failed to provide the required disclosures to inform its workers that it was collecting their biometric identifiers and information, and failed to inform the workers of how long Defendant intended to keep this highly sensitive information.

16. To the extent Defendant is still retaining Plaintiffs' and other similarly situated individuals' biometric information, such retention is an unlawful and continuing infringement on Plaintiffs and the putative Class members' rights under BIPA. Unlike a social security number, which can be changed, no amount of time or money can compensate Plaintiffs, and other similarly situated individuals, if their fingerprints are compromised by the lax procedures through which Defendant captures, collects, stores and uses their workers' biometric information, and Plaintiffs would not have provided their fingerprint to Defendant had they known that Defendant would retain such information for an indefinite period without their consent.

17. Despite the requirements under BIPA and as alleged herein, Defendant's practice of capturing, collecting, storing and using individuals' biometric information without informed written consent violates the individuals' statutorily protected rights under BIPA. Furthermore, Defendant's failure to provide a written policy regarding its schedule and guidelines for the retention and permanent destruction of its workforces' biometric information violates §15(a) of BIPA.

18. Plaintiffs seek damages and injunctive relief for Defendant's BIPA violations, on behalf of herself and similarly situated individuals in the State of Illinois.

**PARTIES**

19. At all relevant times, Defendant Personalizationmall.com, LLC has transacted business in Illinois and currently transacts business in Cook County, Illinois and with Cook County, Illinois residents. Defendant conducts business and advertises its business throughout Cook County, Illinois. Defendant is private entity as that term is defined under BIPA. 740 ILCS 14/10.

20. Plaintiff LaTonia Williams is, and has been at all relevant times, a resident and citizen of the State of Illinois. Plaintiff LaTonia Williams worked at Defendant's warehouse in Burr Ridge, Illinois in 2017 and 2018. Plaintiff LaTonia Williams is a resident of Cook County, Illinois.

21. Plaintiff Dequrvia Williams is, and has been at all relevant times, a resident and citizen of the State of Illinois. Plaintiff Dequrvia worked at Defendant's warehouse in Burr Ridge, Illinois in 2017 and 2018. Plaintiff Dequrvia Williams is a resident of Cook County, Illinois.

22. Plaintiff Derrick Barnes is a resident and citizen of the State of Illinois. Plaintiff Barnes performed work for Defendant at its Bolingbrook location in December 2019.

**JURISDICTION AND VENUE**

23. This Court has original jurisdiction under 28 U.S.C. § 1332(a) as there is complete diversity under 28 U.S.C. § 1332(a) between the parties and the amount in controversy exceeds $75,000.00. Additionally, this Court has original jurisdiction pursuant to Defendant's removal under the Class Action Fairness Act.

24. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in the Eastern Division of the Northern District of Illinois.

**SUBSTANTIVE ALLEGATIONS**

25. BIPA defines "biometric identifiers" or "biometric information" as fingerprints, a scan of hand geometry, and any "information" based on such "identifiers" that is used to identify an individual. 740 ILCS § 14/10.

26. Illinois enacted BIPA to regulate entities that capture, collect, store and use biometric information.

27. The law is specifically designed to require a company that collects biometrics to meet certain conditions, prior to collecting biometric data in order to inform and protect the person whose biometrics it is taking for its own use, and requires signed, written consent attesting that the individual has been properly informed and has freely consented to biometrics collection.

28. Under BIPA, private entities may not collect, capture, purchase, receive through trade, or otherwise obtain a person's biometric identifier or biometric information unless they first:

    a. Inform the person in writing that a biometric identifier or biometric information is being collected;

    b. Inform the person in writing of the specific purpose and length of time for which a person's biometric identifier and/or biometric information is being captured, collected, stored, and used; and

    c. Receive a written release executed by the subject of the biometric identifier or biometric information providing consent.

740 ILCS 14/15(b).

29. Section 15(a) of BIPA also requires that a private entity in possession of biometric identifiers and/or biometric information develop:

    a. A written policy;

   b. Available to the public;

   c. Which establishes a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information;

   d. Within three years of the individual's last interaction with the private entity, or when the purpose for collecting or obtaining the biometric identifiers and/or biometric information has been satisfied.

30. BIPA provides valuable rights, protections, and benefits to people in the State of Illinois. These requirements ensure that the environment for taking or collecting biometrics is not forced or coerced so that individuals are freely advised that by obtaining one's biometric data, the employer is capturing, extracting, creating and recording biometric data, and that individuals can monitor their biometric usage and history.

31. BIPA provides statutory damages if a company takes an individual's biometric information and invades an individual's rights by circumventing BIPA's preconditions and requirements.

32. In the context of employment and work, BIPA requires express written consent, not only in order to capture or collect biometrics, but the company collecting, using and/or storing the fingerprint is required to obtain "informed written consent," in the form of "a release executed by an employee." Those formalized protections enable individuals to freely consent to the taking of their biometrics. (740 ILCS 14/10[2]).

33. Defendant requires its workers to scan their fingers to "clock in" and "clock out" of work each day. Defendant does this using biometric timekeeping devices which capture, collect,

---

[2] Defining "Written release" in the context of employment.

8

store and use the workers' fingerprints. These fingerprint scans are distinctive identifiers of each individual and constitute biometric identifiers and information under BIPA.

34. Unlike ID cards or key codes – which can be changed or replaced if stolen or compromised – fingerprints are unique, permanent biometric identifiers associated with the individual. Defendant's policies and action violate workers' substantive rights protected under BIPA and exposes Plaintiffs and other workers to serious and irreversible risks.

35. The risks associated with a person's biometrics are unparalleled. Such information is more sensitive than a social security number, passport, birth certificate, etc. As such, Illinois' BIPA statute requires private entities to provide certain disclosures and obtain a written release from individuals prior to collecting their biometric identifiers and/or biometric information. Accordingly, BIPA protects an individual's right to be informed with request to the capture, collection, storage and use of their biometric information, allowing them to make more informed decisions as to the circumstances under which they agree to provide their biometric identifiers and/or biometric information.

36. BIPA mandates that entities such as Defendant that engage in the use of biometric identification systems do so with reasonable safeguards after receiving informed consent to take such biometric information from the individual.

37. BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.*, 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

38.     Defendant's practice of collecting, capturing, storing, and/or using an individual's biometric information is unlawful under BIPA because such practices fail to satisfy each of the enumerated requirements described above, and therefore severely infringe on its workers' rights with regard to their biometric identifiers and information.

## FACTS SPECIFIC TO PLAINTIFFS

39.     Defendant is engaged in the business of designing, producing and distributing for sale via the Internet, framed, engraved and personalized items.

40.     Plaintiff LaTonia Williams worked at Defendant's warehouse in the Northern District of Illinois in 2017 and 2018.

41.     Plaintiff Dequrvia Williams worked at Defendant's warehouse in the Northern District of Illinois in 2017 and 2018.

42.     Plaintiff Derrick Barnes performed work for Defendant in the Northern District of Illinois in 2019.

43.     When Plaintiffs performed work for Defendants, Defendant collected, used and captured Plaintiffs' and other workers' fingerprints and fingerprints scans.  When Plaintiffs performed work for Defendant, Defendant required individuals and workers, including Plaintiffs, to provide Defendant with their fingerprints, and then, using biometrics, captured or converted Plaintiffs' and other workers' and individuals' fingerprints as a means of identifying and tracking hours worked by the workers and individuals.

44.     Additionally, Defendant used biometric timekeeping devices and required workers and individuals to use them in order to eliminate false-positive identifications such as "buddy clocking" and other forms of timekeeping fraud.

45. Defendant subsequently scanned and stored Plaintiffs' fingerprint data in its database as a part of the workers' time-clocking process.

46. Each time Plaintiffs began work, they were required to scan their fingerprint before beginning their job functions. They were also required to scan their fingerprints at the end of their workdays and when they clocked in and out for meal breaks.

47. Plaintiffs have never been informed in writing that Defendant was capturing, collecting, storing, or using Plaintiffs' biometric information.

48. Plaintiffs has never been informed of any biometric data retention policy developed by Defendant, nor were they ever informed of whether Defendant would ever permanently delete their biometric information.

49. Plaintiffs were never provided with nor ever signed a written release allowing Defendant to collect or store their biometric information.

50. Additionally, Defendant did not obtain consent for any transmission to third parties of Plaintiffs' and other workers and individuals' biometrics. To the extent Defendant uses out of state vendors to operate its biometrics program in conformance with biometric industry practice, Defendant has also violated BIPA on each occasion it transmits such information to third parties.

51. To this day, Plaintiffs are unaware of the status of their biometric information that was obtained by Defendant. Defendant has not informed Plaintiffs whether it still retains their biometric information, and if it does, for how long it intends to retain such information without their consent. Plaintiffs' biometric information is economically valuable and such value will increase as the commercialization of biometrics continues to grow. As such, Plaintiffs were not sufficiently compensated by Defendant for the retention of their biometric information and

11

Plaintiffs would not have agreed to work for Defendant, at least not for the compensation they received, had they known that Defendant would retain their biometric information indefinitely.

52. Upon information and belief, Defendant does not have a policy of informing its workers in any way what happens to their biometric information after it is captured, collected, and obtained, whether the information is transmitted to a third party and, if so, which third party, and what would happen to the information if an individual discontinues working for Defendant, if a facility were to close, or if Defendant were to be acquired, sold, or file for bankruptcy.

53. By failing to comply with BIPA's mandatory notice, release, and policy publication requirements, Defendant has violated workers' substantive =rights protected under BIPA and, as a result, Plaintiffs and similarly situated individuals continuously have been exposed to substantial and irreversible loss = by Defendant's retention of their biometric information without their consent, with such constant and ongoing exposure constituting a severe harm and violation of their rights.

## CLASS ALLEGATIONS

54. Plaintiffs bring this lawsuit pursuant to 735 ILCS 5/2-801 on behalf of themselves and a class of similarly situated individuals, defined as follows (the "Class"):

> All individuals whose biometrics were captured, collected, obtained, stored or used by Defendant within the state of Illinois at any time within the applicable limitations period.

55. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

56. **Numerosity**: The exact number of Class members is unknown to Plaintiffs at this time, but on information and belief exceeds 100, in which case, individual joinder is impracticable.

Defendant has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from over 100 individuals who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

57. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and Class, and those questions predominate over any questions that may affect individual members, and frame issues for class-wide adjudication. Common questions for the Class include, but are not necessarily limited to the following:

    A. Whether Defendant has a practice of capturing, collecting, storing or using Class members' biometrics;

    B. Whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information when the initial purpose for collecting and obtaining such identifiers or information has been satisfied or within three years of the individual's last interaction with Defendant, whichever occurs first;

    C. Whether Defendant obtained an executed written release from fingerprinted workers before capturing, collecting, or otherwise obtaining their biometrics;

    D. Whether Defendant obtained an executed written release from fingerprinted workers, before capturing, collecting, converting, sharing, storing or using their biometrics;

    E. Whether, in order to collect biometrics, Defendant provided a writing disclosing to workers the specific purposes for which the biometrics are being collected, stored and used;

    F. Whether, in order to collect biometrics, Defendant provided a writing disclosing to

> fingerprinted workers the length of time for which the biometrics are being collected, stored and used;
>
> G. Whether Defendant's conduct violates BIPA;
>
> H. Whether Plaintiffs and the Class are entitled to damages, and what is the proper measure thereof; and
>
> I. Whether Plaintiffs and the Class are entitled to injunctive relief.

58. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interest of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

59. **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties

and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economics of time, effort and expense will be fostered and uniformity of decisions will be ensured.

## COUNT I
## VIOLATIONS OF ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT
### (**Damages**)

60. Plaintiffs, individually and on behalf of all others similarly situated, repeat and re-allege the preceding allegations as though fully set forth herein.

61. BIPA is a remedial statute designed to protect individuals, by requiring consent and disclosures associated with the handling of biometrics, particularly in the context of fingerprint technology. 740 ILCS §§ 14/5(g), 14/10 and 14/15(b)(3).

62. The Illinois General Assembly's recognition of the importance of the public policy and benefits underpinning BIPA's enactment, and the regulation of biometrics collection, is detailed in the text of the statute itself. *E.g.,* 740 ILCS § 14/5(a), (c), (d), (f), (g).

63. Defendant has been a "private entity" in possession of Plaintiffs' and other workers' and individuals' biometrics, and collected and captured their biometric identifiers and biometric information within the meaning of the Act.

64. As more fully set forth above, at relevant times Defendant recorded, collected, and stored Plaintiffs' and other individuals' biometric identifiers and biometric information based on those identifiers as defined by BIPA, 740 ILCS § 14/10, through the imposition of biometric time clocks.

65. Section 14/15(a) of the BIPA provides:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such

identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

66. In violation of Section 14/15(a), Defendant failed to make such a written policy publicly available to Plaintiffs and other Class members or comply with it.

67. Section 14/15(b) of the BIPA provides that:

No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first: (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

68. In violation of Section 14/15(b), Defendant has collected, captured, stored or obtained Plaintiffs' and other Class members' biometric identifiers and biometric information without:

   I. informing Plaintiffs and the Class (including, where applicable, their legal authorized representatives), in writing, that their biometric identifiers or biometric information were being recorded, obtained, collected or stored;

   II. informing Plaintiffs and the Class (including, where applicable, their legal authorized representatives), in writing, of the specific purpose and length of term which the biometric identifiers or biometric information were being collected, stored, and used; and

   III. receiving a written release executed by Plaintiffs and the Class, and executed by them as a condition of employment.

69. Defendant took Plaintiffs and other Class members' fingerprints, and knowingly caused their biometrics to be captured, collected, recorded, and stored, without making publicly available the required policy that explains, for example, any purpose for which the biometric identifiers and information were collected, a retention schedule, and guidelines for permanently destroying biometric identifiers and information.

70. As a result of Defendant's above described acts and omissions, Defendant has unlawfully and coercively taken their biometrics; it has failed to provide them with information required by BIPA; it has deprived them of benefits, rights, opportunities and decisions conferred and required by the Illinois legislature via BIPA; and it illegally recorded, possessed, converted and stored their fingerprints, biometrics and property.

71. By collecting, storing, and using Plaintiffs' and the Class' biometric identifiers and biometric information as described herein, Defendant violated the BIPA rights of Plaintiffs and each Class member.

72. Additionally, to the extent Defendant has disclosed Plaintiffs' and the Class members' biometric information to any vendors without first obtaining Plaintiffs' and the Class members' written consent, Defendant has further violated BIPA.

73. Accordingly, Defendant has violated BIPA, and Plaintiffs and the Class have been damages and are entitled to damages available under BIPA, including damages for each violation.

**COUNT II**
**VIOLATIONS OF ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT**
(**Injunctive Relief**)

74. Plaintiffs, individually and on behalf of all others similarly situated, repeat and re-allege the preceding allegations as though fully set forth herein.

75. BIPA provides for injunctive relief. 740 ILCS § 14/20(4).

76. Plaintiffs and other Class members are entitled to an order requiring Defendant to make disclosures consistent with the Act and enjoining further unlawful conduct.

77. First, Plaintiffs seek an order requiring Defendant to publicly disclose a written policy establishing any specific purpose and length of term for which Plaintiffs' and other workers' biometrics have been collected, stored, and used, as well as guidelines for permanently destroying such biometrics when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first, as required by 740 ILCS § 14/15(a).

78. Second, Plaintiffs seek an order requiring Defendant to disclose whether Defendant has retained Plaintiffs' and other workers' biometrics in any fashion, and if, when, and how such biometrics were permanently destroyed, consistent with BIPA.

79. Third, due to the aforementioned facts, and Defendant's failure to make publicly available facts demonstrating BIPA compliance as BIPA requires, Defendant should be ordered to: (i) disclose the extent to which it has disseminated, sold, leased, traded, or otherwise profited from Plaintiffs' and other fingerprinted workers' biometric information, which is strictly prohibited under BIPA; and (ii) disclose the standard of care that it employed to store, transmit, and protect such biometrics, as provided under BIPA. 740 ILCS § 14/15(c), (d), (e).

80. Fourth, Defendant should be enjoined from further BIPA non-compliance, and should be ordered to remedy any BIPA compliance deficiencies forthwith.

81. Plaintiffs and other Class members' legal interests are adverse to Defendant. There is substantial controversy between Plaintiffs and Defendant warranting equitable relief so that Plaintiffs and the Class may obtain the protections that BIPA entitles them to receive.

82. Plaintiffs and the Class do not know what Defendant has done (or intends to do)

with their stored biometrics. Absent injunctive relief, Defendant is likely to continue their BIPA non-compliance and Plaintiffs and other Class members will continue to be uninformed on their rights under BIPA.

83. For the reasons set forth above, Plaintiffs are likely to succeed on the merits of their claims.

84. BIPA establishes the importance, value, and sensitive nature of biometrics, along with the need to protect and control it; Plaintiffs are entitled to know what Defendant has done with it as set forth above, and to an affirmation and verification that it has been permanently destroyed as required by 740 ILCS § 14/15(a).

85. The gravity of the harm to Plaintiffs and the Class, absent equitable relief, outweighs any harm to Defendant if such relief is granted.

86. As a result, Plaintiffs request commensurate injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray that the Court grant the following relief:

a. Certify the Class, and designate Plaintiffs as Class representative and their counsel as Class Counsel;

b. Find that Defendant has violated the Biometric Information Privacy Act, and enter judgment in favor of Plaintiffs and others similarly situated;

c. Provide commensurate temporary, preliminary and permanent injunctive relief for Plaintiffs and the Class as set forth above;

d. Award all damages available to Plaintiffs and the Class under applicable law, including statutory damages;

   e. Award Plaintiffs and the certified class all costs and expenses incurred in this action, including reasonable attorneys' fees, and requiring Defendant to pay the costs and expenses of class notice and claims administration; and,

   f. Award Plaintiffs and the certified class such further and other relief the Court deems just and appropriate.


Dated: February 2, 2021       Respectfully Submitted,

                /s/ Thomas M. Ryan
                One of Plaintiffs' Attorneys

| | |
|---|---|
| Thomas M. Ryan | James X. Bormes |
| Law Office of Thomas M. Ryan, P.C. | Catherine P. Sons |
| 35 E. Wacker Drive, Suite 650 | Law Office of James X. Bormes, P.C. |
| Chicago, IL 60601 | 8 S. Michigan Ave., Suite 2600 |
| 312.726.3400 | Chicago, IL 60603 |
| tom@tomryanlaw.com | 312.201.0575 |
| | bormeslaw@sbcglobal.net |
| | cpsons@bormeslaw.com |

Alejandro Caffarelli
Lorrie T. Peeters
Katherine Stryker
Caffarelli & Associates Ltd.
224 N. Michigan Ave., Ste. 300
Chicago, IL  60604
312.763.6880
lpeeters@caffarelli.com
acaffarelli@caffarelli.com
kstryker@caffarelli.com

*Counsel for Plaintiff LaTonia Williams, Plaintiff Dequrvia Williams, and Plaintiff Derrick Barnes*