# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LATONIA WILLIAMS, DEQURVIA WILLIAMS and DERRICK BARNES, individually and on behalf of all others similarly situated, | ) ) ) ) | No. 1:20-cv-00025 |
| | ) | *Consolidated with: No. 1:20-cv-02232* |
| Plaintiff, | ) ) | Judge Thomas M. Durkin |
| v. | ) ) | |
| PERSONALIZATIONMALL.COM, LLC, | ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' MOTION AND MEMORANDUM FOR
## FINAL APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

Page

I.      Introduction .............................................................................................................1

II.     Legal Background and Procedural History ...........................................................1

III.    Summary of Settlement Terms ..............................................................................1

        A.      Class Definition ..........................................................................................2

        B.      Settlement Fund; Allocation of the Fund; Payments to Class Members ................2

        C.      Uncashed Checks Will Be Distributed to the Unclaimed Property Division .........2

        D.      Defendant's Representations of Compliance with BIPA ...........................3

        E.      Release of Claims .......................................................................................3

        F.      Settlement Administrator ............................................................................3

        G.      Attorney Fees, Costs, and Service Awards ...............................................4

        H.      The Notice and Claims Process Was Successful ......................................4

IV.     The Court Should Grant Final Approval ...............................................................6

        A.      Rule 23(e)(2) Factors Favor Final Approval ............................................7

                1.      The Class Representatives and Class Counsel have Adequately
                        Represented the Proposed Settlement Class – Rule 23(e)(2)(A) ................7

                2.      The Settlement is the Product of Arm's-Length, Non-Collusive
                        Negotiations – Rule 23(e)(2)(B) ...................................................8

                3.      The Relief Secured for the Settlement Class Warrants Final Approval –
                        Rule 23(e)(2)(C) ...........................................................................9

                4.      The Settlement Treats Members of the Settlement Class Equally –
                        Rule 23(e)(2)(D) .........................................................................11

        B.      Seventh Circuit Case Law Supports Final Approval .............................11

                1.      Strength of the Case for Plaintiffs and the Settlement Class on the
                        Merits, Balanced Against the Extent of the Settlement Offer, and the
                        Complexity, Length, and Expense of Further Litigation .........................11

2.     The Amount of Opposition to the Settlement and Reaction of Class Members to the Settlement ........................................................................13

3.     Opinion of Competent Counsel ..................................................................15

4.     The Stage of Proceedings and the Amount of Discovery Completed .......15

V.     Conclusion ............................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Int'l Grp. Inc. v. ACE INA Holdings, Inc.,*
   No. 07 CV 2898, 2012 WL 651727, at *1 (N.D. Ill. Feb. 28 2012) ......................................6, 13

*Baldwin v. Metrostaff,*
   19-CH-04285 (Cook Cnty. May 3, 2022) ..........................................................................11, 14

*Burlinski v. Top Golf,*
   No. 1:10-cv-06700 (N.D. Ill. Oct. 6, 2021) ...............................................................................12

*Chambers v. Together Credit Union,*
   No. 19-CV-00842-SPM, 2021 WL 1948453, at *2 (S.D. Ill. May 14, 2021) ...........................7

*Gaca v. Transportation Repairs and Services, Inc.,*
   No. 17 CH 13914 (Cir. Ct. Cook. Cnty., Nov. 18, 2019) .........................................................12

*Gascho v. Global Fitness Holdings, LLC,*
   822 F.3d 269, 290, (6th Cir. 2016) ...........................................................................................14

*Hernandez v. Hooters, Inc.,*
   No. 17 CH 13593 (Cir. Ct. Cook Cnty., Oct. 31, 2019) ...........................................................12

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.,*
   789 F. Supp. 2d at 958 ...............................................................................................................9

*In re Facebook Biometric Info. Priv. Litig.,*
   522 F. Supp. 3d at 629 .............................................................................................................14

*In re NCAA Student-Athlete Concussion Injury Litig.,*
   332 F.R.D. 202, 217 (N.D. Ill. 2019) .........................................................................................7

*In re Ravisent Techs., Inc. Sec. Litig.,*
   2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) ...................................................................12

*Jones v. CBC Rest. Corp.,*
   1:19-cv-06736 (N.D. Ill. Oct. 22, 2020) ..................................................................................12

*Kusinski v. ADP LLC,*
   (Cir. Ct. Cook Cnty. Feb. 10, 2021) .........................................................................................14

*Marshall v. Life Time Fitness,*
   No. 17 Ch 14262 (Cir. Ct. Cook Cty., July 30, 2019) ..............................................................12

*McDaniel v. Qwest Commc'ns Corp.,*
   NO. CV 05 C 1008, 2011 WL 13257336, at *4 (N.D. Ill. Aug. 29, 2011) ...............................13

*Prelipceanu v. Jumio Corp.,*
   2018-CH-15883 (Cir. Ct. Cook Cnty, July 21, 2020) ...............................................................14

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP,*
No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) .........................................13

*Roach v. Walmart, Inc.,*
19-CH-1107 (Cook Cnty. June 16, 2021) .........................................12

*Rosenbach v. Sim Flags Ent. Corp.,*
2016 CH 00013 (Cir. Ct. Lake Cnty. May 14, 2021).........................................12

*Sekura v. L.A. Tan Enters., Inc.,*
2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) .........................................14

*Snyder v. Ocwen Loan Servicing, LLC,*
No. 14 c 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).....................................6, 7, 8

*Sullivan v. DB Invs., Inc.,*
667 F.3d 273, 329 n.60 (3rd Cir. 2011).........................................14

*Sykes v. Clearstaff,*
19 CH 03390 (Cir. Ct. Cook Co.) .........................................14

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
463 F.3d 646, 653 (7th Cir. 2006).........................................7

*Tims v. Black Horse Carriers, Inc.,*
127801 .........................................9

*Thome v. Novatime,*
No. 19-cv-6256 (N.D. Ill. Mar. 8, 2021) .........................................14

*Uhl. V. Thoroughbred Tech. & Telecommunications, Inc.,*
309 F.3d 978, 986 (7th Cir. 2002).........................................6

*Wong v. Accretive Health, Inc.,*
773 F.3d 859, 863 (7th Cir. 2014).........................................7, 8, 9

*Zhirovestskiy v. Zayo Group, LLC,*
17-CH-09323 (Cook Cnty. Apr. 8, 2019) .........................................12

**MISCELLANEOUS**

4 *Newberg on Class Actions* § 13:53 .........................................10

*Federal Trade Commission, Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns,* p. 11 (Sept. 2019) .........................................14

## I.     Introduction

On March 24, 2022, the Court granted preliminary approval of the Parties' non-reversionary $4,500,000 class action Settlement under the Illinois Biometric Information Privacy Act ("BIPA"). (ECF No. 97). After preliminary approval, the Settlement Administrator issued the Notice of Settlement and Claim Forms. The Notice informed Settlement Class Members of their rights in the Settlement: the right to submit a Claim Form to request a payment, the right to request to be excluded from the Settlement, and the right to object to the fairness of the Settlement. 3,829 Settlement Class Members (approx. 20.80% of the Class) have submitted Claim Forms to request payment[1]. If each of the 3,829 individuals who has submitted a claim receives a Settlement Payment (as discussed below, some claims were received after the Response Deadline) each claimant will receive approximately $764.95. No Settlement Class Member objected to the Settlement and only one requested exclusion from it. The Settlement Class's positive reaction to the Settlement and the Notice process reflects the strength and fairness of the Settlement. Accordingly, the Court should grant final approval of the Parties' Settlement.

## II.    Legal Background and Procedural History

Plaintiffs set forth the legal background and procedural history of this case in their Motion for Preliminary Approval (ECF No. 92) and in Paragraphs A though Q of the Parties' Settlement Agreement, which is attached hereto as Exhibit 1.

## III.   Summary of the Settlement Terms

The settlement terms are summarized below.

---

[1] Fifty-six individuals and one entity who did not appear on the class list submitted claims via a draft claim form. The Parties (through the Settlement Administrator) have preliminarily rejected those claims, requested those claimants to submit evidence of their membership in the Class, and informed them that absent such information, their claims will be rejected. Because those claims were preliminarily rejected, they are not included in the count of 3,829 valid claims.

**A.     Class Definition** (Ex. 1, Sett. Agree., § 1.26)

The Settlement Class Representatives seek final approval of the following class:

> All individuals who registered to use the finger vein-based timekeeping system deployed by PMall within the state of Illinois at any time during the system's deployment (May 2016 through April 2020).

The Court conditionally certified this class for purposes of settlement. (ECF No. 97, ¶ 5).

**B.     Settlement Fund; Allocation of the Fund; Payments to Class Members**
(Ex. 1, Sett. Agree., §§ 1.10, 4)

While denying all liability and wrongdoing, Defendant has agreed to pay a non-reversionary "Gross Fund" of $4,500,000.00 to resolve the claims in this case on a class action basis. None of the Gross Fund shall revert back to Defendant. The "Net Fund" is the Gross Fund minus the following deductions, all subject to Court approval: Settlement Class Counsel's attorney fees and costs; the Settlement Administrator's costs; and the Settlement Class Representatives' Service Awards. Plaintiffs requested these deductions from the Gross Fund by separate filing during the Notice period. (ECF No. 99). The Net Fund will be distributed *pro rata* to Settlement Class Members who returned valid claim forms ("Settlement Class Participants") including, subject to court approval, individuals who submitted valid but untimely forms. If the Settlement is approved, each of the 3,829 Settlement Class Participants will receive approximately $764.95.[2]

**C.     Uncashed Checks Will Be Distributed to the Unclaimed Property Division**
(Ex. 1, Sett. Agree., § 7.4, 9.15)

Settlement Class Participants will have 180 days to cash their settlement payments. Funds from checks not cashed by the deadline will be distributed to the Unclaimed Property Division of the Illinois Treasurer's Office. This will enable Settlement Class Participants to request their

---

[2] A small portion of these 3,829 claims were received after the Response Deadline. As set forth in the proposed final approval order, the Parties have agreed, subject to court approval, to pay these and other valid but late-submitted claims so long as such claims are identified to this Court at or before the Final Approval Hearing as submitted late due to excusable neglect on the part of the claimant.

settlement payments if they miss the check cashing deadline. *See* https://icash.illinoistreasurer.gov/app/faq-general (last visited June 21, 2022) (Illinois "serves as a custodian of the assets [of unclaimed property] and never takes ownership of them.").

**D.** **Defendant's Representations of Compliance with BIPA**
(Ex. 1, Sett. Agree., § 14)

Defendant represents that since April 2020, it has stopped using a finger vein scanner and has deleted and destroyed all finger scan data for workers previously collected and stored. Defendant has also represented that at no time did Defendant disclose or transfer finger scan data for workers to any third parties.

**E.** **Release of Claims** (Ex. 1, Sett. Agree., § 5.1)

Subject to final approval by the Court, Settlement Class Members who did not timely and validly exclude themselves from the Settlement forever waive and release "all claims arising out of the allegations in the Consolidated Class Action Complaint in the Action, including claims that were litigated in the Action or that could have been brought in the Action, whether known or unknown, arising from or related to the same nucleus of facts, or that relate in any way to Plaintiffs' and the Settlement Class Members' Biometric Information or Biometric Identifiers (as those terms are defined in BIPA) or to data generated by measurements of their biological, physical, or behavioral patterns or characteristics, or to the possession, collection, capture, purchase, receipt, obtainment, sale, lease, trade, profit, disclosure, redisclosure, dissemination, use, storage, transmission, protection, or deletion of their Biometric Information, of their Biometric Identifiers, or of their biological, physical, or behavioral patterns or characteristics."

**F.** **Settlement Administration** (Ex. 1, Sett. Agree., § 7)

Analytics Consulting, LLC ("Settlement Administrator" or "Analytics") administering the Notice and claims process and will administer the remainder of the Settlement including issuing

the settlement checks. The Settlement Administrator's costs are estimated to be $76,504. In a separate filing, Plaintiffs requested that the Court award the Settlement Administrator these costs. (ECF No. 99).

### G. Attorney Fees, Costs, and Service Award
(Ex. 1, Sett. Agree., §§ 1.11, 11)

Consistent with the Settlement Agreement and Notice to Settlement Class Members, on November 5, 2021, Plaintiffs filed a Motion for Attorney Fees ($1,464,185), Litigation Costs ($7,780.38) and Service Awards ($7,500 for each Named Plaintiff). (ECF No. 99). Consistent with Rule 23(h) of the Federal Rules of Civil Procedure, Plaintiffs filed this motion during the Notice period and the Settlement Administrator posted the filing at the settlement website so that Settlement Class Members could review it when deciding whether to object, request exclusion, submit a claim, or do nothing. *See* https://pmallfingerveinscansettlement.com/.

### H. The Notice and Claims Process Was Successful
(Ex. 1, Sett. Agree., §§ 7.2, 7.3)

After the Court granted preliminary approval of the Parties' settlement, Analytics provided notice, under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715(b) on behalf of the Defendant to the Attorney General of the United States and to the attorneys general of the states in which Class Members were believed to reside. (Ex. 2, Mitchell Decl., ¶ 6). Defendant provided Analytics with the Class List in the form of a spreadsheet. (*Id.*, ¶ 7). The Class Data contained 20,341 putative Class Members. (*Id.*). Analytics marked 1,938 records as duplicative, resulting in a Class List of 18,403 unique Class Members. (*Id.*). Analytics imported the Class Data to create a project-specific database and processed the records through the US Postal Service's NCOA database to standardize and update the available mailing addresses. (*Id.*, ¶ 8). The Class Data did not have a mailing address available for 1,918 Class Members. (*Id.*).

On April 14, 2022, Analytics mailed by first-class mail the "Notice of Class Action Settlement" and the "Claim Form" ("Notice"), in both English and Spanish, to the 16,485 unique Class Members in the Class List that had a mailing address available. (*Id*., ¶ 9). Templates of the "Notice of Class Action Settlement" and the "Claim Form" in English and Spanish are attached as Exhibits A – D to Ex. 2 attached hereto. On April 14, 2022, Analytics also emailed 5,641 Notices to Class Members who had an email address available in the Class List. (*Id*., ¶ 10).

Direct notice to Class Members was supplemented by a targeted campaign on websites and social media targeting Class Members. (*Id*., ¶ 11). Beginning on April 14, 2022 advertisements were run on Facebook, Instagram, and WhatsApp targeted to Class Members copies of which are attached hereto as Exhibit E to Ex. 2 attached hereto. (*Id*., ¶ 12).

From the April 14, 2022, Notice mailing, Analytics received 4,675 notice packets returned as undeliverable. (*Id*., ¶ 12). Analytics performed an address trace on undeliverable notices and located an updated address for 917 records. (*Id*.). Analytics re-mailed the notice and claim form to these 917 records. (*Id*.). Additionally, 125 notices were forwarded to addresses provided by the United States Postal Service. (*Id*.).

On May 16, 2022, Analytics emailed and mailed reminder postcards to Class Members that had not yet submitted a claim. (*Id*., ¶ 13). From the date the notice mailed, Analytics has provided a toll-free number at 1-855-702-3468 and an email address at info@pmallfingerveinscansettlement.com to answer Class Members' questions. (*Id*., ¶ 18). From the date the notice mailed, Analytics has hosted a website at www.pmallfingerveinscansettlement.com. (*Id*., ¶ 19). The website contained general settlement information, including frequently asked questions, key settlement dates, and copies of the

Settlement Agreement. Prior to the Claim Deadline, the website also included an online claim for Class Members to submit claims electronically. (*Id.*).

The deadline to submit a claim form was June 13, 2022. To date, Analytics has received 3,829 claims from Class Members. (*Id.*, ¶ 14). In addition, fifty-seven (57) claims were submitted by claimants who did not use a valid claim form and who do not appear in the Class Data provided by the Defendant. (*Id.* ¶ 17). Analytics has informed these claimants that unless they provide additional information, they will not be eligible to receive a Settlement Payment. (*Id.*). The deadline to request exclusion was June 13, 2022. (*Id.*, ¶ 15). To date, Analytics has received one (1) request for exclusion and is not aware of any objections to the Settlement. (*Id.*, ¶¶ 15, 16).

## IV. The Court Should Grant Final Approval

Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements and mandates that "claims, issues, or defenses of a certified class…may be settled…only with the court's approval…after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e); *AIG v. ACE INA Holdings*, No. 07 CV 2898, 2012 WL 651727, at *1 (N.D. Ill. Feb. 28 2012); *Uhl v. Thoroughbred Tech. & Tel., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). Rule 23(e)(2) sets out that a court must consider whether (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018); *see, e.g.*, *Snyder v. Ocwen Loan Servicing*, No. 14 c 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

As the Advisory Committee for the 2018 amendments to Rule 23 recognized that "each circuit has developed its own vocabulary for expressing these concerns[,]" the Court should also take into account the factors set out by the Seventh Circuit. Fed. R. Civ. P. 23(e), Advisory

Committee's Note to 2018 Amendment. These factors are: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health*, 773 F.3d 859, 863 (7th Cir. 2014) (the "*Wong* factors"); *accord Synfuel v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Courts in the Seventh Circuit continue to analyze these factors in tandem with the Rule 23(e)(2) factors to ensure that a settlement is fair, reasonable, and adequate. *See, e.g.*, *In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019). Applying these factors, the Settlement is fair, reasonable, adequate, and should be approved.

### A.     Rule 23(e)(2) Factors Favor Final Approval

#### 1.     The Class Representatives and Class Counsel Have Adequately Represented the Class

The first Rule 23(e)(2) factor, whether the class representative and class counsel have adequately represented the class, focuses on class counsel's and the class representative's performance as it relates to the "conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. This factor is generally satisfied where the named plaintiff participated in the case diligently, and class counsel fought vigorously in the litigation. *Snyder*, 2018 WL 4659274, at *4; *see also Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948453, at *2 (S.D. Ill. May 14, 2021) (finding this factor satisfied when class counsel vigorously litigated the case "both through motion practice on the legal merits and through discovery of facts and potential damages"). In addressing this factor, courts are to examine whether plaintiff and class counsel had adequate information to negotiate a class-wide settlement, considering the nature and amount of

discovery completed, whether formally or informally. *See Snyder*, 2018 WL 4659274 at *4. This inquiry is coextensive with the Seventh Circuit's direction to consider the "stage of the proceedings and the amount of discovery completed." *Wong*, 773 F.3d at 863 (internal quotations omitted).

Here, Settlement Class Counsel and the Settlement Class Representatives pursued this case vigorously on behalf of the potential class. Settlement Class Counsel briefed and defeated Defendant's motion to dismiss, served written discovery requests, and briefed and defeated a motion to stay. Settlement Class Counsel challenged Defendant's assertions regarding whether its timekeeping system is covered by BIPA, whether Plaintiffs and the class members provided consent under BIPA and whether biometric policy documents were sufficient under BIPA in the event the Court determined that BIPA covered Defendant's particular timekeeping system and vein scanning process. The Settlement Class Representatives prepared written responses to discovery on behalf of the proposed class action claims in the case. They have met with Settlement Class Counsel in person on several occasions and have conferred with their counsel throughout this case. The Parties exchanged mediation statements that laid out their factual and legal theories which were thoroughly addressed by the Parties during their day-long mediation session overseen by Judge Palmer (Ret.). At mediation, Settlement Class Counsel negotiated a settlement that obtains meaningful non-reversionary monetary relief, with an appropriate release of claims. Accordingly, the Class Representatives and Class Counsel have adequately represented the proposed Settlement Class and Rule 23(e)(2)(A) is satisfied.

## 2. The Settlement is the Product of Arm's-Length, Non-Collusive Negotiations

The Settlement was the result of arm's-length negotiation between counsel, with the assistance of neutral mediator and retired Judge Stuart E. Palmer. The Settlement was not collusive. Accordingly, Rule 23(e)(2)(B) is satisfied.

### 3. Relief Secured for the Settlement Class Warrants Final Approval

The next factor under Rule 23(e)(2) examines whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Rule 23 instructs courts to take into account several sub-factors, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(i-iv). This analysis necessarily encompasses two of the *Wong* factors. The Seventh Circuit has stated that the first Rule 23(e)(2) factor "[is the] most important factor relevant to the fairness of a class action settlement" and it is critically important for a settlement to meet this standard. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d at 958 (internal quotations omitted).

Here, Plaintiffs faced significant risks by the defenses raised and argued by Defendant, including defenses and arguments that:

(1) Defendant's timekeeping and vein-scanning system are not subject to or covered by BIPA;

(2) Defendant's on-boarding and alleged consent process satisfies BIPA's requirements;

(3) the statute of limitations under BIPA is one or two years instead of five years;[3]

(4) Defendant's biometric device did not collect biometric identifiers or biometric information as defined by BIPA;

(5) Defendant's alleged violations of BIPA were not negligent or reckless; and

---

[3] This Court disagreed with Defendant's statute of limitations arguments in denying the Motion to Dismiss, though on January 26, 2022, the Illinois Supreme Court accepted a Petition for Leave to Appeal in *Tims v. Black Horse Carriers, Inc.*, No. 127801, and will decide the issue of the whether BIPA has a five-, two- or one-year statute of limitations.

(6) that any award of liquidated damages per class member would be excessive in light of the alleged absence of injury and thus the damages would violate Defendant's due process rights under the Illinois and/or United States Constitutions.[4]

Based on those defenses, Defendant could have defeated or greatly reduced any recovery in this lawsuit. Apart from the merits of Defendant's defenses, additional litigation would have carried expense and delay, through expert testimony, class certification proceedings, summary judgment proceedings, a potential trial and appeal. Avoiding further risks and delay, this Settlement offers immediate and substantial value relative to the strength of Plaintiffs' claims.

The "effectiveness of [the]…method of distributing relief to the class" weighs strongly in favor of the adequacy of this Settlement under Rule 23(e)(2)(C)(ii) and the first Seventh Circuit factor. An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." William B. Rubenstein, 4 *Newberg on Class Actions* § 13:53. This Settlement requires full distribution of the Net Fund directly to Settlement Class Members who submit valid claim forms, with no reversion. This is an optimal method of distributing relief to the class and fully satisfies Rule 23(e)(2)(C)(ii).

The next sub-factor considers the adequacy of the relief provided to the class taking into account "the terms of [the] proposed award of attorney's fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii). As Settlement Class Counsel explained in their request for fees and costs (ECF No. 99), their request for one-third of the Gross Fund, after deducting litigation expenses, administration costs and the Service Awards, is in-line with the Seventh Circuit precedent and is equal to or below the fees awarded in other class settlements, including similar BIPA class settlements. (*See* BIPA Settlement Chart at ECF No. 99-3). The Settlement provides

---

[4] When the Parties engaged in mediation and reached a settlement, the Illinois Supreme Court had not yet decided the issue of whether the IWCA preempts BIPA claims. On February 3, 2022, the Illinois Supreme Court ruled the IWCA does not preempt BIPA claims.

for payment of any attorney fees after final approval at the same time as payments to Settlement Class Members. (Ex. 1, Sett. Agree., §§ 9.13, 9.14). Settlement Class Counsel received no special priority. As a result, Rule 23(e)(2)(C)(iii) supports final approval.

The fourth sub-factor, which requires the parties to identify any side agreements made in connection with the settlement, Fed. R. Civ. P. 23(e)(2)(C)(iv), is not applicable here as the written Settlement Agreement provided to the Court represents the entirety of the proposed Settlement.

### 4. The Settlement Treats Members of the Settlement Class Equally

The Settlement treats Class Members equally by distributing awards to Settlement Class Members from the Net Settlement Fund on a *pro rata* basis. (Ex. 1, Sett. Agree., § 4.2).

### B. Seventh Circuit Case Law Supports Final Approval

### 1. Strength of the Case for Plaintiffs and the Settlement Class on the Merits, Balanced Against the Extent of the Settlement Offer, and the Complexity, Length, and Expense of Further Litigation

At trial, Class Members theoretically stood to recover statutory damages of $1,000 per negligent violation of the statute or $5,000 per intentional or reckless violation. 740 ILCS 14/20.[5] The benefits of this Settlement represent an excellent recovery for the class when compared to other BIPA class action settlements. Based on the 20.80% claims rate, after any approved fees and costs are paid, if each of the 3,829 Class Members who has submitted a claim form receives a Settlement Payment, each will be paid approximately $764.95 from Settlement Fund. This is an excellent result and it compares favorably with other similar BIPA class settlements given final approval by Illinois state and federal courts. *See e.g.*, *Baldwin v. Metrostaff*, 19-CH-04285 (Cook Cnty. May 3, 2022)(approving BIPA settlement of $292.98 net per person for 2,251 class

---

[5] While BIPA allows recovery of $5,000 per violation for "intentional" or "reckless" violations, 740 ILCS 14/20(2), Plaintiffs acknowledge they may not have prevailed on this theory. Defendant asserted and produced documents showing a purported consent process, a biometric information privacy policy and a biometric destruction policy. Further, Defendant has represented that it has destroyed all biometrics.

members); *Burlinski v. Top Golf*, No. 1:19-cv-06700 (N.D. Ill. Oct. 6, 2021)(recovery of $650 net per class member); *Roach v. Walmart, Inc.*, 19-CH-1107 (Cook Cnty. June 16, 2021)(recovery of $645 net per claimant); *Rosenbach v. Six Flags Ent. Corp.*, 2016 CH 00013 (Cir. Ct. Lake Cnty. May 14, 2021)(preliminarily approving $36 million fund for approximately 1,110,000 class members, and capping class member payments at $200 or $60 depending on date of finger scan); *Jones v. CBC Rest. Corp.*, 1:19-cv-06736 (N.D. Ill. Oct. 22, 2020)(recovery of $532.28 net per person); *Hernandez v. Hooters, Inc.*, No. 17 CH 13593 (Cir. Ct. Cook Cnty., Oct. 31, 2019)(each participating class member being eligible to receive a *pro rata* share of a settlement fund that was worth approximately $265.00); *Gaca v. Transportation Repairs and Services, Inc.*, No. 17 CH 13914 (Cir. Ct. Cook. Cnty., Nov. 18, 2019)(each class member being eligible to receive a *pro rata* share of a settlement fund of approximately $250.00 per person); *Marshall v. Life Time Fitness*, No. 17 CH 14262 (Cir. Ct. Cook Cty., July 30, 2019)(each class member being eligible to receive approximately $270 net each person); *Zhirovetskiy v. Zayo Group, LLC*, 17-CH-09323 (Cook Cnty. Apr. 8, 2019)($450 gross per class member).

The Settlement also represents a meaningful recovery when compared against average recoveries in class action settlements. *See In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

The Settlement here is also strong because Defendant could have obtained a victory or greatly reduced the potential class recovery based on its defenses in the lawsuit, including those mentioned on pages 8-9 above. Regardless of the outcome of the defenses, if the litigation had

continued, it would have been complex, expensive, and protracted. The Parties would have completed written discovery and taken depositions of party witnesses. Plaintiffs also would have obtained third-party discovery from over 10 staffing agencies and the manufacturer of Defendant's timekeeping system. After that, Plaintiffs would have served an expert witness report about how Defendant's timekeeping system collected biometric identifiers and/or biometric information covered by BIPA. This likely would have resulted in Defendant hiring its own expert witness—indeed, Defendant represented in mediation that it had already retained an expert. Following that additional discovery, Plaintiffs would have filed a motion for class certification and Defendant likely would have moved for summary judgment. If the case proceeded through a judgement, the losing party likely would have appealed given the lack of controlling precedent on the key legal disputes. Instead of expensive, complicated, and protracted litigation, this Settlement provides significant and guaranteed monetary relief to Settlement Class Members now.

## 2. The Amount of Opposition to the Settlement and Reaction of Class Members to the Settlement

Lack of opposition to a class action settlement "indicates that the class members consider the settlement to be in their best interest." *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *6. Here, the Court-approved Settlement Administrator diligently implemented the Notice plan outlined in the Agreement, and the objection and exclusion deadlines have passed without a single person objecting to the Settlement and only one person opting out of participating. That not one person has objected and only one has requested to be excluded from the Settlement is powerful evidence of the Settlement Class's support for the Settlement. *See McDaniel v. Qwest Commc'ns Corp.*, No. CV 05 C 1008, 2011 WL 13257336, at *4 (N.D. Ill. Aug. 29, 2011) (finally approving settlement with no objections and noting that "[a]n absence of objection is a 'rare phenomenon[]' and 'indicates the appropriateness of the request[]'") (citations omitted); *see also Retsky Family Ltd.*

*P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) (stating that "[t]he absence of objection to a proposed class settlement is evidence that the settlement is fair, reasonable and adequate").

Similarly, the 20.80% claims rate also indicates a strong positive reaction from the Settlement Class. *See In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d at 629 (describing 22% claims rate in BIPA case as "an unprecedentedly positive reaction by the class"); *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 290 (6th Cir. 2016) (discussing expert testimony that response rates in claims-made class action settlements "generally range from 1 to 12 percent, with a median response rate of 5 to 8 percent[.]"); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3rd Cir. 2011) (*en banc*) (noting that claims rate in consumer class action settlements "rarely exceed seven percent"). Indeed, the rate at which Class Members are participating in this Settlement surpasses other finally-approved BIPA settlements. *See e.g., Baldwin v. Metrostaff*, No. 19 CH 04285 (Cir. Ct. Cook Co.)(approx. 11% claim rate in BIPA class-wide settlement involving approx. 19,863 class members); *Sykes v. Clearstaff*, 19 CH 03390 (Cir. Ct. Cook Co.)(14% claim rate in BIPA class-wide settlement involving approx. 8,510 class members); *Sekura v. L.A. Tan Enters., Inc.*, 2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) (15% claims rate in BIPA class action); *Kusinski v. ADP LLC*, 2017-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) (13% claims rate in BIPA class action); *Thome v. Novatime*, No. 19-cv-6256, (N.D. Ill. Mar. 8, 2021, ECF No. 90) (10% claims rate, class size of 62,000); *Prelipceanu*, 2018-CH-15883 (Cir. Ct. Cook Cnty., July 21, 2020) (5% claims rate, class size of 260,000)[6].

---

[6] The average claims rate in class settlements is approximately 9%. *See* Federal Trade Commission, Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns, p. 11 (Sept. 2019), available at https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf.

### 3. Opinion of Competent Counsel

Settlement Class Counsel are highly experienced class action attorneys and have been lead or co-lead counsel in numerous actions in federal and state courts, including BIPA class actions. (Ex. 4, Ryan Decl. at ¶ 7; Ex. 5, Bormes Decl. at ¶ 6; Ex. 6, Caffarelli Decl. at ¶ 9). In this case, Settlement Class Counsel became familiar with the particular issues of this case by briefing Defendant's Motion to Dismiss, by briefing Defendant's Motion to Stay, by drafting and preparing responses to written discovery, by challenging Defendant's factual and legal positions regarding the purported consent process and the timekeeping system, and by negotiating a favorable resolution at the mediation. By their actions in this case and relevant experience, Settlement Class Counsel are well-positioned to opine on the strength and fairness of this Settlement.

### 4. The Stage of Proceedings and the Amount of Discovery Completed

This case was resolved only after adversarial litigation, the exchange of information and documents regarding the on-boarding at Defendant's warehouse, production of information regarding putative class members, and a private mediation with the Honorable Stuart E. Palmer (ret.). Thus, the stage of litigation has advanced to a state that Class Counsel can fully and fairly evaluate the value of the settlement.

## V. Conclusion

For the foregoing reasons, Plaintiffs respectfully request that this Court grant final approval of the Parties' Settlement and such other relief as the Court deems appropriate. A proposed Final Approval Order is attached hereto as Exhibit 6.

Dated: July 6, 2022                              Respectfully Submitted,

                                                 /s/ Thomas M. Ryan
                                                 One of Plaintiffs' Attorneys


Thomas M. Ryan                                   James X. Bormes
Law Office of Thomas M. Ryan, P.C.               Catherine P. Sons
35 E. Wacker Drive, Suite 650                    Law Office of James X. Bormes, P.C.
Chicago, IL 60601                                8 S. Michigan Ave., Suite 2600
312.726.3400                                     Chicago, IL 60603
tom@tomryanlaw.com                               312.201.0575
                                                 bormeslaw@sbcglobal.net
Alejandro Caffarelli                             cpsons@bormeslaw.com
Katherine Stryker
Caffarelli & Associates Ltd.
224 N. Michigan Ave., Ste. 300
Chicago, IL  60604
312.763.6880
acaffarelli@caffarelli.com
kstryker@caffarelli.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that he caused a copy of the foregoing Plaintiffs' Motion and Memorandum for Final Approval of the Parties' Class Action Settlement to be filed and served on July 6, 2022 upon the following individuals via the Court's CM/ECF electronic filing system:

Justin O. Kay
Sophie H. Gotlieb
Faegre Drinker Biddle & Reath LLP
320 S. Canal Street, Suite 3300
Chicago, IL 60606-1698
Tel: (312) 569-1000
justin.kay@faegredrinker.com
sophie.gotlieb@faegredrinker.com

/s/ Thomas M. Ryan